# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CP-00069-COA

**ERIC LAQUINNE BROWN A/K/A ERIC L. BROWN A/K/A ERIC BROWN**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

DATE OF JUDGMENT:                12/20/2021
TRIAL JUDGE:                HON. KELLY LEE MIMS
COURT FROM WHICH APPEALED:        PONTOTOC COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        ERIC LAQUINNE BROWN (PRO SE)
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                BY: ALLISON ELIZABETH HORNE
NATURE OF THE CASE:        CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                AFFIRMED - 05/23/2023
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., LAWRENCE AND EMFINGER, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     In 1999, Eric LaQuinne Brown pled guilty to the murder of a pregnant woman and manslaughter of the unborn child.  More than twenty years later, Brown filed a motion for post-conviction collateral relief (PCR) challenging both of his convictions on the basis that he received ineffective assistance of counsel.  The Pontotoc County Circuit Court denied Brown's PCR motion because it was untimely and barred as successive.  He appeals.  After due consideration, we affirm the circuit court's order.

## FACTS AND PROCEDURAL HISTORY

¶2.     Brown appeals from the denial of his sixth PCR motion.  In a previous appeal, this Court summarized the events that led to Brown's guilty pleas:

In January 1999, Brown was involved in two relationships with two different women. One of those women was Tennille Brown, his wife, with whom he had at least one child. The other was Shorelonda Moore, his girlfriend. Brown and Shorelanda already had one child together. And Shorelanda was several months pregnant with another of Brown's children. Tennille and Shorelanda did not get along, and the situation was stressful for Brown. In early January 1999, Brown allegedly spoke with friends about getting rid of Shorelanda, as she was causing trouble between him and his wife.

On January 22, the situation came to a head. The day of the murder, Brown called Shorelanda at her job at McDonald's several times. Witnesses told law enforcement that Brown and Shorelanda made plans to meet once she got off work. Shorelanda believed they were going to spend the weekend together in Memphis, Tennessee. Brown admitted to law enforcement he met Shorelanda behind a restaurant in Pontotoc after she got off work. The two sat in Shorelanda's car, as they often did. But that day their conversation took a dark turn. Shorelanda and Brown began arguing because Shorelanda was upset that Brown had married Tennille only a few days earlier. As the argument escalated, according to Brown, he began to shake her. Soon, Shorelanda was unresponsive.

Brown returned home and told Tennille he had killed Shorelanda. He then told his wife they were leaving for Memphis to ditch Shorelanda's body. Tennille put the children in the car, and Brown loaded a five-gallon gas can in the trunk. Tennille dropped Brown off at Shorelanda's car and followed Brown as he drove Shorelanda's body to Memphis. Once in Memphis, he drove Shorelanda's car down an alley. He parked the car, used the gas can he had brought from Pontotoc to douse the vehicle, and set it and Shorelanda's body on fire.

Early the next day, a man found Shorelanda's car smouldering in the alley. Memphis police discovered Shorelanda's body in the car. Her pants and underwear were pulled below her hips. Her shirt and bra were pulled up, and her bra was partially around her throat. The medical examiner later determined Shorelanda's cause of death was strangulation. The ligature marks on her neck matched the pattern of her bra. Medical examiners also determined Shorelanda was approximately twenty-eight weeks pregnant.

Law enforcement quickly caught up with Brown. Both he and Tennille spun a story about being in Tupelo. But that was determined to be a lie. Tennille eventually gave several statements to officers, each incriminating her

2

and her husband in some way. Police found physical evidence that incriminated Brown. And eventually, Brown gave a voluntary statement to law enforcement. Both Brown and Tennille were indicted for Shorelanda's murder and the manslaughter of her unborn child.

*Brown v. State* (*Brown II*), 198 So. 3d 325, 328-29 (¶¶4-8) (Miss. Ct. App. 2015) (paragraph numbering omitted).

¶3.     Brown filed his first unsuccessful PCR motion on May 15, 2000, but he did not appeal after the circuit court denied it. *See Brown v. State* (*Brown I*), 907 So. 2d 979, 980 (¶4) (Miss. Ct. App. 2005). He filed his second unsuccessful PCR motion approximately four months later, but he again did not appeal the circuit court's denial. *See id*. His third unsuccessful PCR motion—filed on August 19, 2003—led to his first appeal. *Id*. This Court upheld the circuit court's decision to summarily dismiss it. *Id*. at 981 (¶10).

¶4.     In February 2014, Brown filed his fourth PCR motion. *Brown II*, 198 So. 3d at 330 (¶17). Among other things, Brown claimed that he should have received a competency hearing before he entered his guilty pleas. *Id*. On appeal, this Court held:

> Brown was in fact deemed competent by the psychologist who evaluated him. And the record shows the trial judge indeed considered the psychologist's report, and questioned Brown about his competency, before accepting Brown's guilty plea[s]. Furthermore, neither Brown nor his counsel ever asserted Brown was incompetent to stand trial. So from the face of Brown's own motion and the underlying criminal record, Brown failed to show the absence of a formal competency hearing led to a denial of his due-process rights. . . .

*Id*. at 328 (¶2).

¶5.     Brown subsequently filed a fifth unsuccessful PCR motion that led to another appeal. *Brown v. State* (*Brown III*), 256 So. 3d 643, 643 (¶1) (Miss. Ct. App. 2018). He again attempted to argue that the circuit court should not have accepted his guilty pleas without

3

conducting a competency hearing. *Id*. This Court upheld the dismissal of that PCR motion because it was time-barred and barred as successive. *Id*.

¶6. In his sixth PCR motion, Brown claimed he received ineffective assistance of counsel because his defense attorney did not obtain an expert psychiatrist, adequately investigate his mental history, obtain an independent competency hearing, or forward his sisters' contact information to the expert who conducted a mental-competency examination. The circuit court ordered the State to respond to Brown's PCR motion. The circuit court ultimately denied Brown's PCR motion because it was time-barred and barred as successive and alternatively lacked merit. On appeal, Brown reiterates his ineffective-assistance-of-counsel claims. He also argues that the circuit court should have granted his motion for "summary judgment" and held the State in contempt. Finally, Brown asserts that the circuit court should have conducted an evidentiary hearing on his sixth PCR motion.

## STANDARD OF REVIEW

¶7. "When reviewing a [circuit] court's decision to deny a petition for post[-]conviction relief this Court will not disturb the [circuit] court's factual findings unless they are found to be clearly erroneous." *Brown v. State*, 731 So. 2d 595, 598 (¶6) (Miss. 1999). "Where questions of law are raised the applicable standard of review is de novo." *Id*.

## ANALYSIS

### I. Brown's ineffective-assistance-of-counsel claims were untimely, barred as successive, and precluded by res judicata.

¶8. According to Brown, the circuit court erred when it did not find that he received ineffective assistance of counsel before he entered his guilty pleas. More precisely, Brown

4

claimed his attorney provided ineffective assistance because he did not provide information to the Mississippi State Hospital at Whitfield so Brown could undergo a mental-competency examination. Brown also asserted that his attorney should have ensured that Brown received a competency hearing before he entered his guilty pleas. He reiterates his assertions on appeal. The circuit court correctly found that Brown's claims were time-barred and successive.

¶9. Brown collaterally challenged a judgment of convictions that were entered in 1999. Because he entered guilty pleas, he had three years from the "entry of the judgment of conviction" to seek relief under the Mississippi Uniform Post-Conviction Collateral Relief Act (UPCCRA). Miss. Code Ann. § 99-39-5(2) (Rev. 2020). In 2020, he filed the PCR motion that led to the current appeal. Brown's PCR motion clearly was untimely.

¶10. The circuit court also correctly found that Brown's PCR motion was statutorily barred as a successive motion. Miss. Code Ann. § 99-39-23(6) (Rev. 2020). Brown had previously filed five unsuccessful PCR motions. *Brown III*, 256 So. 3d at 643 (¶1). The PCR motion that led to this appeal was his *sixth* attempt to collaterally challenge his guilty-plea convictions. "Mississippi statutory law grants each movant 'one bite at the apple when requesting post-conviction relief.'" *Thomas v. State*, 355 So. 3d 287, 298 (¶25) (Miss. Ct. App. 2023).

¶11. Moreover, as discussed above, Brown has twice attempted to argue that the circuit court should have conducted a competency hearing before accepting his guilty pleas. In his sixth PCR motion, he attempted to repackage his claim by framing it as an ineffective-

5

assistance-of-counsel issue. So not only has Brown essentially raised this particular argument twice before, he also could have raised it and his other ineffective-assistance claim in previous proceedings. Because he did not, those issues are precluded by res judicata. *Brown v. State*, 306 So. 3d 719, 730 (¶15) (Miss. 2020) ("Res judicata also extends to those claims that could have been raised in prior proceedings but were not.").

¶12. Finally, although Brown argues that his ineffective-assistance claims are not barred because, in his view, effective assistance of counsel qualifies as a "fundamental right," the Mississippi Supreme Court has recently overruled any precedent that has held "the fundamental-rights exception can apply to the substantive, constitutional bars codified by the Legislature in the [UPCCRA]." *Howell v. State*, 358 So. 3d 613, 616 (¶12) (Miss. 2023). Thus, based on the supreme court's holding in *Howell*, we conclude that Brown's claim of a fundamental-rights exception fails to apply to or overcome the UPCCRA's litigation bars.[1]

II. **The circuit court was not obligated to grant Brown's motion for summary judgment and acted within its discretion when it declined to find the State in contempt.**

¶13. After Brown filed his sixth PCR motion, the circuit court ordered the State to file a response. Although the circuit court gave the State additional time, the State still did not

---

[1] The UPCCRA specifies that certain statutory exceptions exist to the successive-motions bar and the statute of limitations. *E.g.*, Miss. Code Ann. § 99-39-5(2)(a)(i) (Rev. 2020) (providing exceptions to the UPCCRA's three-year statute of limitations); *id*. § 99-39-23(6) (providing substantively identical exceptions to the UPCCRA's successive-motions bar). As the PCR movant, Brown bears the burden to prove a statutory exception to the UPCCRA's litigation bars. *Cook v. State*, 301 So. 3d 766, 777 (¶32) (Miss. Ct. App. 2020). But Brown does not attempt to satisfy his burden. In fact, in his opening brief, Brown expressly states that his ineffective-assistance-of-counsel claims are *not* based on newly discovered evidence.

respond within the extended deadline. Brown filed a motion for summary judgment arguing that he was entitled to judgment in his favor. The circuit court subsequently ordered the State to show cause why it should not be held in contempt for failing to respond to Brown's PCR motion. During the show-cause hearing, the prosecutor said that he thought he had more time to file a response, but he otherwise made no excuse for not doing so. He also submitted a response on the same day of the hearing. The circuit court ultimately declined to find the prosecutor in contempt. By denying Brown's PCR motion, the circuit court inherently denied his motion for summary judgment.

¶14. On appeal, Brown insists that he was entitled to summary judgment in his favor. He also claims that the circuit court should have found the prosecutor in contempt. But he cites no authority for the former assertion, and no relevant authority for the latter. Consequently, both claims are barred. *Byrom v. State*, 863 So. 2d 836, 853 (¶35) (Miss. 2003).

### III. The circuit court was not obligated to conduct an evidentiary hearing on Brown's PCR motion.

¶15. Finally, Brown argues that the circuit court erred because it did not conduct an evidentiary hearing on his sixth PCR motion. "However, a circuit court may dismiss a PCR motion without an evidentiary hearing if the movant fails to show that his claim is 'procedurally alive.'" *Ford v. State*, 336 So. 3d 1146, 1150 (¶12) (Miss. Ct. App. 2022) (collecting cases). Brown was not entitled to an evidentiary hearing because his PCR motion was untimely, barred as successive, and precluded by res judicata. It is of no moment that the circuit court directed the State to file a response to Brown's PCR motion. Indeed, Mississippi Code Annotated section 99-39-19(1) (Rev. 2020) expressly provides:

7

If the motion is not dismissed at a previous stage of the proceeding, the judge, *after the answer is filed* and discovery, if any, is completed, shall, upon a review of the record, determine whether an evidentiary hearing is required. *If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice shall require*.

(Emphasis added). Thus, a circuit court may clearly deny a PCR motion without an evidentiary hearing even if the State has filed an answer to the motion.

## CONCLUSION

¶16. Brown's sixth PCR motion was untimely, subject to the successive-motions bar, and precluded by res judicata. He was not entitled to an evidentiary hearing. The circuit court was not obligated to grant his motion for summary judgment or find the State in contempt. Accordingly, we affirm the circuit court's order.

¶17. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

8